UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Constantine Thompson (MN) and
Tina Dado (IL), individually, and
on behalf of all others similarly
situated,

                       Plaintiffs,

vs.

Speedway SuperAmerica LLC,
Marathon Petroleum Company
LLC and Marathon Oil
Corporation,

                    Defendants.           Civ. No. 08-1107 (PJS/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. Introduction

    This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Motion of the Plaintiffs Constantine Thompson

("Thompson"), and Tina Dado ("Dado"), for Conditional Certification of a Collective

Action, and to Permit Court-Supervised Notice. A Hearing on the Motion was

conducted on July 3, 2008, at which time, the Plaintiffs appeared by Charles N. Nauen, David D. Leishman, and Jon A. Tostrud, Esqs., and the Defendants appeared by Andrew J. Voss, Esq.  For reasons which follow, we recommend that the Motion be denied.

## II.   Facts and Procedural Background

The Plaintiffs commenced this action on behalf of themselves, and others similarly situated, alleging that the Defendants violated the Fair Labor Standard Act ("FLSA"), Title 29 U.S.C. §§201-219. Specifically, Thompson, who was an Assistant Manager at a SuperAmerica store in Minnesota, and Dado, who was an Assistant Manager, and a Co-Manager, at a Speedway store in Illinois, allege that they, and other similarly situated employees, worked as Co-Managers, Assistant Managers, and Shift Leaders (collectively, "Co-Managers"), at Speedway and SuperAmerica stores which were owned and operated by the Defendants, and that they, and other similarly situated Co-Managers, worked "off-the-clock," in excess of forty (40) hours per week, without receiving full overtime compensation.  See, Complaint, Docket No. 1, at ¶¶5-7, 13-25.

On June 13, 2008, the Plaintiffs filed a Motion for Conditional Certification of a Collective Action, pursuant to Title 29 U.S.C. §216(b).  See, Plaintiffs' Motion,

Docket No. 22.  The Plaintiffs also seek to provide Judicial Notice to all of the Co-Managers, who have not, as yet, been joined as Plaintiffs, and who are employed by the Defendants at their Speedway, and SuperAmerica stores.  Id.  At the time that the Plaintiffs' Motion was filed, eight (8) persons, in addition to Thompson and Dado, had "opted-in" to the suit.  See, Docket Nos. 3, 4, 5, 9, 14, 17, 18, 20.[1]

The Defendants oppose the Plaintiffs' Motion, and we address the parties' arguments in turn.

## III.  Discussion

A.    Standard of Review.  "The FLSA allows employees to bring a collective action 'for and in behalf of * * * themselves and other employees similarly situated.'" Frank v. Gold'n Plump Poultry, Inc., 2005 WL 2240336 at *2 (D. Minn., September 14, 2005), quoting Title 29 U.S.C. §216(b).  However, "[u]nlike class actions under Rule 23, '[n]o employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.'"  Smith v. Heartland Automotive Services, Inc., 404 F. Supp.2d 1144, 1149 (D. Minn. 2005), quoting Title 29 U.S.C. §216(b).  The process by which

_____

[1]Since the Plaintiffs' Motion was filed, six (6) additional persons have filed Notices of Consent, in which they have expressed their willingness to join as Plaintiffs in this action.  See, Docket Nos. 25, 26, 32, 34, 41, 42.

putative plaintiffs are joined, in a FLSA collective action, is commonly referred to as the "opt-in" process, and Courts may facilitate that process by authorizing the named Plaintiffs to transmit a notice to potential class members. See, <u>Hoffman-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 170 (1989).   However, "[t]hat power is to be exercised * * * only in 'appropriate cases,' and remains within the discretion of the district court." <u>Severtson v. Phillips Beverage Co.</u> ("<u>Severtson I</u>"), 137 F.R.D. 264, 266 (D. Minn. 1991).

"The fundamental inquiry in determining whether a collective action under [Section] 216(b) is appropriate is whether or not the plaintiffs are 'similarly situated.'" <u>Smith v. Heartland Automotive Services, Inc.</u>, supra at 1149-50. "Unfortunately, [Section] 216(b) does not define the term 'similarly situated,' and there is little circuit law on the subject." <u>Theissen v. General Electric Capital Corp.</u>, 267 F.3d 1095, 1102 (10th Cir. 2001).   In this District, like many other jurisdictions, the determination of whether the plaintiffs are "similarly situated" is made by using a two-step process, which has recently been described as follows:

> At the initial stage, the court determines whether the class should be conditionally certified for notification and discovery purposes. [Kalish v. High Tech Institute, Inc., 2005 WL 1073645 at *1 (D. Minn., April 22,2005)].  At this conditional certification stage, the plaintiffs need only

come forward with evidence establishing a colorable basis for their claim that the putative class members were together the victims of a single decision, policy, or plan. See, id. at *2; Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 267 (D. Minn. 1991)(Severtson I). That is, the plaintiffs must show that there is some factual basis beyond the mere averments in their complaint for the class allegations. Severtson I, 137 F.R.D. at 267; Severtson v. Phillips Beverage Co., 141 F.R.D. 276, 278-79 (D. Minn. 1992 (Severtson II). At the second stage -- which comes after discovery is completed -- the court uses a stricter standard for determining whether the putative class members are similarly situated and reconsiders whether the trial should proceed collectively or if it should be severed. Kalish, 2005 WL 1073645 at *1. At the second stage, the court conducts a fact intensive inquiry of several factors, including: (1) the extent and consequence of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. See, Theissen, 267 F.3d at 1102-03.

Frank v. Gold'n Plump Poultry, Inc., supra at *2; see, Smith v. Heartland Automotive Services, Inc., supra at 1149-50; Kalish v. High Tech Institute, Inc., 2005 WL 1073645 at *2-3 (D. Minn., April 22, 2005); see also Theissen v. General Electric Capital Corp., supra at 1102-03; Koren v. SUPERVALU, Inc., 2003 WL 1572002 at *15-16 (D. Minn., May 14, 2003).

Here, the parties have not yet engaged in any discovery, and accordingly, we analyze the Plaintiffs' Motion under the initial stage of review.

At this initial stage, the Plaintiffs need only show that there is a "colorable basis" for their collective action, see, Smith v. Heartland Automotive Services, Inc.,

supra at 1149, and that factual similarities, or differences among the putative plaintiffs, are such that the case may be properly managed as a collective action.  See, Ray v. Motel 6 Operating Limited Partnership, 1996 WL 938231 at *4 (D. Minn., March 18, 1996); see also, Severtson I, supra at 266 ("As a matter of sound case management, a court should, before [authorizing a notice], make a preliminary inquiry as to whether a manageable class exists."); see, e.g., Diaz v. Electronics Boutique of America, 2005 WL 2654270 at *5 (W.D. N.Y., October 17, 2005); England v. New Century Financial Corp., 370 F. Supp.2d 504, 509 (M.D. La. 2005).

"A colorable basis means that plaintiff must come forward with something more than the mere averments in its complaint in support of its claim." Severtson v. Phillips Beverage Co. ("Severtson II"), 141 F.R.D. 276, 278-79 (D. Minn. 1992).  This analysis "does not require th[e] court to make any findings of fact with respect to contradictory evidence presented by the parties nor does th[e] court need to make any credibility determinations with respect to the evidence presented."  Id.; Burch v. Qwest Communications Int'l, Inc., 500 F. Supp.2d 1181, 1186 (D. Minn. 2007)("The court does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties at this initial stage."), quoting Dege v. Hutchingson Tech., Inc., 2007 WL 586787 at *2 (D. Minn., February 22, 2007);

Parker v. Rowland Express, Inc., 492 F. Supp.2d 1159, 1164 (D. Minn. 2007)("At the notice stage, the district court makes a decision -- usually based only on the pleadings and any affidavits which have been submitted -- whether notice of the action should be given to potential class members.").   However, "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency."  Barron v. Henry County School System, 242 F. Supp.2d 1096, 1103 (M.D. Ala. 2003), citing Sheffield v. Orius Corp., 211 F.R.D. 411, 416 (D. Or. 2002).

     B.    Legal Analysis.  Here, the Plaintiffs urge that conditional certification is warranted because Dado, Thompson, and each of the other opt-in Plaintiffs, are or were Co-Managers at Speedway, or SuperAmerica stores, which was owned and operated by the Defendants; that each was classified as a "non-exempt employee" for the purposes of overtime eligibility; that each used the same paper, and computer systems, to track their time; that each was subject to the same corporate hierarchy; and that, pursuant to the practices of the Defendants, each was deprived of overtime pay.[2]

---

[2]In support of their Motion, the Plaintiffs have submitted Declarations from Dado and Thompson. See, Affidavit of Charles N. Nauen ("Nauen Aff."), Docket No. 30, Exhibits 9, 13.  In addition, the Plaintiffs have submitted Declarations from six (6) opt-in Plaintiffs, id., Exhibits 5-8, 10-11, and from two (2) former Store Managers, who are not putative Plaintiffs in this action.  Id., Exhibits 12, 14.

As factual support for their Motion, the Plaintiffs contend, and the Defendants agree, that the Defendants' corporate policy allots a certain number of "authorized hours" to each Speedway, or SuperAmerica store, and that the number of authorized hours varies from store to store based, in part, on each store's sales, services, square footage, and business hours. See, Affidavit of Charles N. Nauen ("Nauen Aff."), Docket No. 30, Exhibit 1 (Speedway/SuperAmerica Assistant Manager Program Manual); see also, Affidavit of Andrew J. Voss ("Voss Aff."), Docket No. 37, Exhibit J, at ¶4. The parties also agree that, in order to track the employees' hours, the Speedway and SuperAmerica stores previously employed a handwritten time-keeping system, but now use a computerized system, known as TimeLink. See, e.g., Nauen Aff., supra, Exhibit 9 at ¶¶20-21, Exhibit 10 at ¶¶20, 22; Voss Aff., supra, Exhibit B at ¶¶4-5. Each week, the Store Manager creates a schedule, which is based upon the authorized hours for the store, and employees record their time by punching in, and out, of TimeLink. Id.; Voss Aff., supra, Exhibit B at ¶6. The employees are then required to "sign off" on the recorded hours, before the time card is sent to corporate headquarters. See, Voss Aff., supra, Exhibit B at ¶¶7-8.

In addition to staffing the store, Co-Managers, including the Plaintiffs and the putative Plaintiffs, were sometimes required to perform certain duties, which take

them from the store premises, such as conducting gasoline price surveys of competitors, or answering telephone calls from the store, while on-call at home, with respect to any questions or problems which may then have arisen.  See, e.g., Nauen Aff., supra, Exhibits 5 at ¶8, Exhibit 6 at ¶8, Exhibit 7 at ¶7, Exhibit 8 at ¶9; see also, Voss Aff., supra, Exhibit C (Responsibility Statements for Co-Manager, Associate Manager, Assistant Manager, and Shift Leader 1 and 2).

The Plaintiffs contend that the authorized hours, which are allotted to each store, do not account for the time that they spent working outside the store, i.e., conducting gasoline price surveys, or responding to telephone calls.  See, Nauen Aff., supra, Exhibit 10 at ¶5.  The Plaintiffs also contend that the time cards, which were sent to corporate headquarters, did not adequately reflect their hours, including both the time that they spent on-duty, at the stores, and the time that they spent conducting gasoline price surveys, or responding to telephone calls at home.  According to the Plaintiffs, they recorded only their scheduled hours, rather than the time they actually spent working "off the clock."  See, e.g., Nauen Aff., supra, Exhibit 5 at ¶¶13-20, Exhibit 6 at ¶¶12-20.

In fact, in their Declarations, seven (7) of the Plaintiffs aver that they were instructed, by their Store Managers, not to report any time worked -- including time

spent conducting gasoline price surveys and answering telephone calls -- other than during their scheduled hours.  See, <u>Nauen Aff.</u>, supra, Exhibit 5 at ¶4 ("While I was employed as an Assistant Manager and Shift Leader, I was instructed by my Store Managers to not record hours past the scheduled times."), Exhibit 6 at ¶4 ("While I was employed by Speedway, I was instructed by my Store Manager to not record hours past the scheduled times actually budgeted and allocated to me on the schedule, in fact, was [sic] specifically instructed by my Store Manager to continue working off-the-clock after my scheduled times."), Exhibit 7 at ¶4, Exhibit 8 at ¶6, Exhibit 10 at ¶4, Exhibit 11 at ¶4, and Exhibit 13 at ¶4.  The Plaintiffs further allege that Store Managers received financial bonuses for staying within authorized hours, see, <u>Voss Aff.</u>, supra, Exhibit N, but were penalized for exceeding authorized hours, either by being subject to discipline by District Managers, or by being required to work any additional, unauthorized hours themselves.  See, <u>Nauen Aff.</u>, supra, Exhibit 12 at ¶7, Exhibit 14 at ¶8.

Accordingly, the Plaintiffs maintain that the Defendants' policies **implicitly** required Co-Managers to work "off the clock," in order to stay within the store's authorized hours.  Each Plaintiff asserts that "Speedway required me and other Assistant Managers, Shift Leaders and Co-Managers to work 'off the clock' * * * ."

- 10 -

Nauen Aff., supra, Exhibit 5 at ¶16, Exhibit 6 at ¶15, Exhibit 7 at ¶14, Exhibit 8 at ¶18, Exhibit 9 at ¶18, Exhibit 10 at ¶18, Exhibit 11 at ¶16, and Exhibit 13 at ¶15.  The Plaintiffs contend that their evidentiary submissions establish the unlawful practices of "at least 33 different Store Managers, at least 18 different District Managers, and at least 11 different Regional Managers," so as to support their claim that the Defendants had a central policy which required unpaid overtime.  See, Plaintiffs' Memorandum in Support, Docket No. 29, at 13.

In addition, the Plaintiffs offer Declarations from two (2) Plaintiffs -- Dado and Josh Fields ("Fields") -- who worked both as Co-Managers, and as Store Managers. See, Nauen Aff., supra, Exhibits 9-10.  Both Dado and Fields attest that, while employed as Store Managers, they were directed, by their District Managers, "to instruct Assistant Managers, Co-Managers and Shift Leaders not to record hours past the scheduled times." Id., Exhibit 9 at ¶5, Exhibit 10 at ¶5.  The Plaintiffs have also submitted Declarations, from two (2) former Store Managers -- Coreen Perry ("Perry") and Maureen Washinifisky ("Washinifisky") -- who are not putative Plaintiffs, and who attest that "[a]ll the District Managers [they] worked under during [their] employment knew that Co-Managers, Shift Leaders and Assistant Managers were regularly working 'off-the-clock.'" Id., Exhibit 12 at ¶9, Exhibit 14 at ¶10.

- 11 -

Given these averments, we find that the Plaintiffs' submissions colorably establish that eight (8) Co-Managers, who were employed by the same corporate entity, and who operated under the same timekeeping system, were required to work "off the clock" by their individual Store Managers.  In addition, the Plaintiffs' submissions colorably establish that four (4) Store Managers were directed, by their District Managers, not to record any unauthorized hours, and that several other District Managers knew that some Co-Managers were working "off the clock." However, the Defendants assert, without contravention, that they own approximately 1,600 convenience stores, and gasoline stations, in nine (9) states.  See, Voss Aff., supra, Exhibit A at ¶3.  Those stores are divided into seven (7) Divisions, and seventeen (17) Regions.  Id., Exhibit B at ¶3.  The Defendants currently employ more than 3,000 individuals as Co-Managers and, over the past three (3) years, due to employee turnover, the Defendants have employed a total of approximately 7,800 persons as Co-Managers.  See, Voss Aff., supra, Exhibit A at ¶¶5-6.

As such, the Plaintiffs' showing simply demonstrates that eight (8) of the potential class of approximately 7,800 Co-Managers, who are, or were, employed at Speedway and SuperAmerica stores that are owned by the Defendants -- less than one per cent (1%) of the potential class -- were assertly required, by their Store Managers,

to work "off the clock."  Even if we included the six (6) opt-in Plaintiffs, who did not

submit Declarations, as well as the Co-Managers, who are not Plaintiffs but who are

identified by name in the Plaintiffs' Declarations, and who were allegedly required to

work "off the clock," the number increases to only thirty-five (35) Co-Managers,

which remains less than one per cent (1%) of the putative class.  See, Nauen Aff.,

supra, Exhibit 5 at ¶7, Exhibit 9 at ¶8, Exhibit 10 at ¶8, Exhibit 11 at ¶7, Exhibit 12

at ¶10, and Exhibit 14 at ¶11.

Such a constricted sampling of putative class members fails to support the

Plaintiffs' assertion of widespread FLSA violations which, purportedly, result from

a common policy or plan.  See, e.g., West v. Border Foods, Inc., 2006 WL 1892527

at *6 (D. Minn., July 10, 2006)(denying Motion for certification where only "six (6)

of the potential class of approximately 240 shift managers, who are employed at Pizza

Hut restaurants owned by the Defendants -- 2.5 per cent of the potential class -- were

allegedly required by their store managers to work off-the-clock"); Harrison v.

McDonald's Corp., 411 F. Supp.2d 862, 870-71 (S.D. Ohio 2005)(averments from

two (2) employees who claimed FLSA violations, out of a potential class of 300, were

insufficient to allow for conditional certification); Flores v. Lifeway Foods, Inc., 289

F. Supp.2d 1042, 1046 (N. D. Ill. 2003)(evidence that demonstrated an employer's

- 13 -

payment practices with respect to two (2) employees out of fifty (50) did not amount to "even a 'modest factual showing' of a common policy or plan.").

Additionally, the Defendants have presented evidence which controverts the Plaintiffs' assertion that a centralized policy required Co-Managers to work "off the clock." Specifically, the Defendants have submitted excerpts, from their Operations Manual, which require non-exempt employees to report all hours worked, whether scheduled or unscheduled, and which require non-exempt employees to be paid for time spent in conducting price surveys, or working at home, and in responding to telephone calls. See, Voss Aff., supra, Exhibit D at SSA000059, SSA000062, SSA000055, SSA001140. As the Plaintiffs acknowledged at the Hearing, each store's authorized hours include a certain amount of overtime, including ten (10) hours of scheduled overtime for each Co-Manager. The Plaintiffs contend, however, that Co-Managers are expected to work additional, unpaid overtime, beyond their scheduled shifts, and away from the store.

In our view, the case presented here is closely analogous to that of West v. Border Foods, Inc., supra, and compels the same result. As in West, the putative class members, here, were employed at different locations, and supervised by different Store Managers. Id. at *9. Moreover, "the nature of the asserted violation differ[s]

- 14 -

among the Plaintiffs," particularly with respect to "the number of uncompensated overtime hours," id., and to the fact that the alleged unpaid overtime is contrary to the Defendant's written policy.   Id.   As in West, the individualized nature of the Plaintiffs' claims make this case inappropriate for certification.

The Plaintiffs urge that West is distinguishable, because here they have alleged that specific duties -- namely, conducting gasoline price surveys, and answering telephone calls from home -- were performed "off the clock," unlike West, in which employees were simply directed to "punch out" after forty (40) hours, but continue working.  See, West v. Border Foods, Inc., supra at *4.  However, in our view, the Plaintiffs' allegations are insufficient to establish either the existence of a central policy, or the performance of an identical, regularly-scheduled task, which would support the certification of a collective action.  See, e.g., Nauen Aff., supra, Exhibit 5 at ¶16 (10 to 15 phone calls per week, gas surveys every day, errands every other week), Exhibit 6 at ¶15 (3 to 4 phone calls per week, gas surveys 3 to 4 times per week, errands every other week), Exhibit 7 at ¶14 (10 to 15 phone calls per day, gas surveys 2 to 3 times per week, errands 6 to 8 times per month), Exhibit 8 at ¶15 (4 to 6 phone calls per week, gas surveys 3 times per week, errands once per month); compare King v. West Corp., 2006 WL 118577 at *14 (D. Neb., January 13, 2006)

("[E]mployees with the same job title are not 'similarly situated' for the purposes of an 'opt-in' FLSA class if their day-to-day job duties vary substantially.")[citations omitted]; Castle v. Wells Fargo Financial, Inc., 2008 WL 495705 at *2 (N.D. Cal., February 20, 2008)(denying Conditional Certification, where "plaintiffs allege that they have been denied overtime pay for 'off the clock' hours worked under a variety of different circumstances").

Since this case is at the initial stage of the certification inquiry, we need not make any lasting factual determinations.  However, neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be seriously advanced if we were to overlook those facts which pointedly reflect that a collective action would be improper.  See, Basco v. Wal-Mart Stores, Inc., 2004 WL 1497709 at *5 (E.D. La., July 2, 2004)("To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for the same prior to certification would be an exercise in futility and wasted resources for all parties involved."); see, e.g., Ray v. Motel 6 Operating Limited Partnership, supra at *4.  The plaintiffs, in Ray, who were assistant managers at the defendant's motels, sought to proceed collectively in their claim that the defendant had denied them overtime payments in violation of the FLSA.  Specifically, the plaintiffs alleged that the

defendants told the assistant managers that the job would require overtime, but that they could not record more than forty (40) hours per week.  In support of their requested certification, the plaintiffs submitted a number of affidavits concerning the defendant's alleged "plan" to deny them overtime payments.

In addressing the propriety of the conditional certification, and the provision of notice, the Court recognized that the "[d]etermination of class status at the notice stage is often liberally authorized since the court has minimal evidence for analyzing the class." Id.  However, the Court determined that, given the extensive facts before it, there was no need for discovery in order to determine whether certification was proper, and it ultimately found that the plaintiffs had failed to satisfy their burden that they were similarly situated for the purposes of the FLSA.  In so finding, the Court recognized that each of the plaintiffs, who had "opted in" to the action, was employed in the same position, pursuant to a similar management plan, as members of a management team which consisted of a manager and an assistant manager; that each of the plaintiffs were employed by the same corporate entity; and that the plaintiffs had each alleged a common illegal plan to deprive them of overtime pay.

However, the Court also noted the individualized nature of the plaintiffs' claims, as the plaintiffs worked at a minimum of thirty-nine (39) different properties,

which were located in twenty (20) different States; the properties, at which the plaintiffs worked, varied widely as to the number of rooms and budgets; and the amount of overtime hours varied among the plaintiffs.  The Court also observed as follows:

> Moreover, the illegal overtime plan alleged by the Plaintiffs in the present action is not necessarily carried out through central management.  First, official written policy dictates that overtime will be paid in compliance with the FLSA. Second, if an illegal scheme exists at all, it is implemented on a decentralized level.  Specifically, the approval of overtime is controlled by area supervisors.  Further, in that Plaintiffs also allege that budget plans demonstrate a need for improper overtime, it is notable that the budgetary plans differ according to region and property.  The evidence does not indicate that all the Plaintiffs sustained injury from one unlawful policy.

Id. at *4.

Under similar circumstances, Courts from other jurisdictions have determined that where an "off the clock" claim requires significant individual considerations, it may be inappropriate for conditional certification.  See, Diaz v. Electronics Boutique of America, supra at *5 (denying a Motion for conditional certification upon the finding that the plaintiff's "allegations -- viz., that he worked 'off-the-clock' without compensation and that his timesheets were altered to delete overtime hours worked -- are too individualized to warrant collective action treatment."), citing Lawrence v.

City of Philadelphia, 2004 WL 945139 at *2 (E.D. Pa., April 29, 2004)(denying

Motion for class certification where "off-the-clock" claim did not involve regularly

scheduled hours that were worked by all members of the class, because "[t]he

circumstances of those individual claims potentially vary too widely to conclude that

* * * the Plaintiffs are similarly situated."); England v. New Century Financial Corp.,

supra at 509 (finding conditional certification improper in a case where an "off-the-

clock" claim involved a multitude of different managers at different locations, and

where liability at one store location would not necessarily require a finding of liability

at another location); Basco v. Wal-Mart Stores, Inc., supra at *7; see also, Castle v.

Wells Fargo Financial, Inc., supra at *6 ("The 'job classification' cases in which

exempt employees challenge[] their exempt status are much more amenable to

collective treatment because there the plaintiffs are challenging class-wide policies

regarding job classification, and evaluation of the plaintiffs' claims depends on

common proof.").

In Basco v. Wal-Mart Stores, Inc., supra at *7, the plaintiffs alleged "wide-

spread occurrence of off-the-clock-work and unpaid overtime" at the defendant's

stores in Louisiana.  In support of their allegations, the plaintiffs presented testimony,

from a former store manager, that six (6) persons worked "off the clock" at his store,

and that he had previously been instructed to delete overtime hours from employees'
time records.  The plaintiffs also presented testimony, from five (5) of the defendant's
employees, who claimed that they had worked more than forty (40) hours without
receiving overtime compensation.  Id. at *6.

In response to the plaintiffs' submissions, the defendants presented evidence
that the plaintiffs were, individually, responsible for punching themselves in and out,
and that the defendant's official policy required payment for all working time.  Id. at
*7.  As such, the defendants urged that "any deviations for [sic] that policy occurs on
a manager-by-manager basis and associate-by-associate basis involving particular
circumstances and anecdotal testimony."  Id.  When presented with this information,
the Court determined that certification was improper, reasoning as follows:

> Simply put, plaintiffs seek to make a corporate policy to
> keep employee wage costs low sufficient proof to justify
> the creation of a class of all Wal-Mart employees that have
> not been properly paid overtime in the last three years.  It
> is obvious from the discovery presented that this "policy"
> and its effects are neither homogeneous nor lend
> themselves to collective inquiry.  The effects of the policy
> as alleged are anecdotal, that is to say particularized.
> Plaintiffs' own witnesses demonstrate that the "policy" was
> not even uniformly or systematically implemented at any
> given store.  While it is true that this "lesser" standard
> should not preclude certification, and "similarly situated"
> does not mean identically situated, plaintiffs have failed in

> their burden of proof to demonstrate identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency. For this reason the Court would deny the Motion to Certify Collective Action.

Id. at *7.[3]

Here, the circumstances are analogous to those that were present in Ray and Basco, in that the Plaintiffs were employed at different store locations, where different individual Store Managers allegedly instructed the Plaintiffs not to report hours, other than those scheduled, in order to deprive the Plaintiffs of proper compensation for their overtime hours.[4]

Furthermore, similar to both Ray and Basco, the alleged violations are contrary to the Defendants' official written policy, which precludes Store Managers from requiring employees to work "off the clock," and which requires payment of time and one-half for all overtime hours worked. In addition, the Plaintiffs' allegations, that Store Managers were rewarded, when they stayed within the authorized hours,

---

[3]While the Court, in Basco, analyzed the plaintiffs' Motion for Class Certification under both the first, and second stage of the two-step analysis, we have limited our discussion of that case to its analysis under the initial, less stringent standard.

[4]Notably, the Plaintiffs have identified the Store Managers, and Division Managers, to whom they reported, but they have not identified the individuals who directed them to work "off the clock."

demonstrates only "a corporate policy to keep employee wage costs low," and does not, standing alone, reveal a central policy for mandatory, unpaid overtime.

Nor is the central monitoring of the TimeLink program sufficient to make a colorable showing that the Defendants had a common policy to require unpaid overtime.  Cf., <u>Burch v. Qwest Communications Int'l, Inc.</u>, supra at 1188 (granting conditional certification in an "off the clock" case, and distinguishing <u>Ray</u> and <u>West</u>, because the defendant had a centralized system for monitoring employees' schedules). Unlike <u>Burch</u>, here, we have no allegations of an identical and regularly-scheduled task, which was performed by the putative class members.  <u>Id.</u> (distinguishing <u>Ray</u> and <u>West</u>, in part, because the plaintiffs alleged that "all employees had to boot up their computers before logging into their telephones" and punching in); see also, <u>Brennan v. Qwest Communications Int'l, Inc.</u>, 2008 WL 819773 at *2 (D. Minn., March 25, 2008)(granting conditional certification, because defendant's quality control policy required all putative class members to "log into the required computer program, perform safety checks on the truck, receive the assigned work and route for the day, load the truck with supplies needed for the day's work, get customer credentials, make 'pre-calls' to customers, complete paperwork, and report time," within time constraints that effectively required putative class members to work off-the-clock

before and after their shifts); <u>Frank v. Gold'n Plump Poultry, Inc.</u>, supra at *3 (granting conditional certification, where "[e]ach representative Plaintiff has averred that he or she is regularly denied pay for the time he or she spends donning, doffing, and/or sanitizing required equipment.").

Here, the Plaintiffs allege that they **sometimes** performed gasoline price surveys, and **sometimes** responded to telephone calls from home, while "off the clock," but on an irregular basis. We find this distinguishable from the sorts of cases, which have been found to be best managed as a collective action -- namely, cases in which the employees allege that they are not paid for mandatory, identical, preparatory tasks, such as donning and doffing protective equipment, booting up their computers, or loading their trucks, at the beginning of a work shift. Even if we were to ignore the fact, that only a small percentage of putative class members have come forward at this stage, we would conclude, on this Record, that the absence of averments as to uncompensated, yet identical, and regularly performed tasks, contraindicates the presence of putative class members who are so similarly situated

as to warrant the certification of a collective action that could be logistically manageable.[5]

We make clear that we find a conditional certification inappropriate here, not because the Defendants are large, nationwide employers, for we agree with the observation that Section 216 should apply to employers both large and small. See, e.g., Falcon v. Starbucks Corp., 2008 WL 155313 at *9 (S.D. Tex., January 15, 2008). Rather, certification is inappropriate because the showings made do not demonstrate such a homogeneity in alleged FLSA violations, with substantiality in the number of employees complaining, so as to commend a collective action on a nationwide basis. In so finding, we accept that the burden on the Plaintiffs, to establish that their case is "appropriate" for conditional certification and judicial notice, "is not a difficult

---

[5]In addition, we note that the Plaintiffs have alleged that they were required to perform a number of other tasks "off the clock," beyond conducting gasoline price surveys and answering telephone calls, on an irregular basis. See, Complaint, supra at ¶¶16 ("filling in for absent employees, assisting with staffing needs, completing paperwork, cleaning, and running errands"), 23 ("missed meal and rest breaks"); Nauen Aff., supra, Exhibit 5 at ¶16(d)-(e)(cleaning and errands), Exhibit 6 at ¶15(d)-(e)(same), Exhibit 7 at ¶14(d)(errands), Exhibit 8 at ¶18(e)(same), Exhibit 9 at ¶18(d)-(g)(meetings, cleaning, and errands), Exhibit 10 at ¶18(d)-(e)(cleaning and errands), Exhibit 11 at ¶16(d)-(g)(transporting other employees, cleaning, and errands), Exhibit 13 at ¶15(d)-(f)(cigarette price surveys, cleaning, errands). Given that each Plaintiff alleges a unique set of tasks, which were irregularly performed, we find those allegations further evidence that this case is inappropriate for certification, and would be wholly unmanageable.

one." <u>Severtson II</u>, supra at 279.  However, before subjecting an employer to the weighty burdens of a collective action, the Plaintiffs must establish a colorable basis for their claim that a manageable class of "similarly situated" Plaintiffs warrants so proceeding.  See, <u>Severtson I</u>, supra at 267.

Where, as here, highly individualized factual assertions are presented, without numeric substantiality, which remotely intimate the potential for an FLSA-violating practice, the Court should be hesitant to presume, in the absence of some cogent evidence, that the intimation is provable, or a universally applicable and established fact.  We conclude, based upon a considered canvassing of the case law, that some reasonably reliable basis for certification of a collective action is required, or else there will be an inevitable trolling, with a most attractive of lures  -- pay over and above that already received -- for those who, individually, and episodically, may have suffered some form of a pay loss that they, on a contemporaneous basis, did not grieve.  The issue is not one of recovering for an FLSA loss, for the Act makes plain that each employee has a right to pay for the time worked, including overtime, and "off the clock" assignments; rather, the issue is whether the recovery should be sought in individualized actions, or in a collective proceeding, and it is on that basis, alone, that we disagree with the Plaintiffs.

In sum, considering the individualized nature of the alleged violations, along with the dearth of evidence to support the Plaintiffs' conclusory assertion of widespread FLSA violations, we find that the Plaintiffs have failed to demonstrate a colorable basis that they were the victims of a common policy or plan, or that a manageable class exists, which would render a collective action appropriate. Therefore, we recommend that the Plaintiff's Motion for Conditional Certification, and for Court-Supervised Notice, be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Motion of the Plaintiffs for Conditional Certification of a Collective Action, and to Permit Court-Supervised Notice [Docket No. 22] be denied.


Dated:  August 21, 2008                          s/Raymond L. Erickson
                                                 Raymond L. Erickson
                                                 CHIEF U.S. MAGISTRATE JUDGE


NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than September 5, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 5, 2008,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.